John L. STOKES and L. Jack Powell,
Plaintiffs-Appellants,

v.

MERRILL LYNCH, PIERCE,
FENNER & SMITH, INC.,
Defendant-Appellee.

No. 74–2076.

United States Court of Appeals,
Sixth Circuit.

Argued April 10, 1975.

Decided Sept. 30, 1975.

Hal Gerber, Gerber & Gerber, Memphis, Tenn., for plaintiffs-appellants.

Jesse E. Johnson, Jr., Burch, Porter & Johnson, Memphis, Tenn., for defendant-appellee.

Before WEICK, CELEBREZZE and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

At issue in this appeal is whether the district court correctly applied the United States Arbitration Act of 1925 [1] to stay proceedings pending arbitration in an action for amounts allegedly owed plaintiffs under a profit sharing plan initiated by plaintiffs' former employer, and for declaratory judgment that a portion of that profit sharing plan is void under Tennessee law. We conclude that the Arbitration Act was correctly applied, and thus affirm the order of the district court.

Plaintiffs-appellants Stokes and Powell were "account executives" formerly employed with defendant-appellee Merrill Lynch, Pierce, Fenner and Smith, Inc. Stokes was employed with that firm from 1961 to 1970 and Powell from 1965 to 1968. Plaintiffs' joint complaint filed in the Chancery Court of Shelby County, Tennessee, alleged those facts and further alleged that each had voluntarily resigned his employment with Merrill Lynch and had obtained "other employment with competing stock brokerage firms in the City of Memphis, Tennessee". Plaintiffs' complaint further alleged full performance of all the conditions of their employment and their participation in the "Merrill Lynch Profit Sharing Plan for Employees", Article 11 of which provides:

ARTICLE 11

Forfeiture of Benefits

11.1 A Participant who, in the determination of the Committee, voluntarily terminates his employment with the Corporation or provokes his termination and engages in an occupation which is, in the determination of the Committee, competitive with the Corporation, or any affiliate or subsidiary thereof, shall forfeit all rights to any benefits otherwise due or to become due from the Trust Fund with respect to units credited for fiscal years subsequent to the fiscal year ended December 30, 1960.

Plaintiffs alleged that during their employment certain amounts were credited to their respective accounts and that, pursuant to Articles 5 and 8 of the Plan, such profit sharing "units" became vested and payable upon severance of employment. Plaintiffs averred that Stokes had accumulated approximately $40,000 and Powell, approximately $3,000 in such units. Plaintiffs claimed that a controversy existed between the parties concerning their legal rights under the profit sharing plan; they further claimed that Article 11.1 is unlawful and void under Tennessee law for several reasons.[2]

Plaintiffs prayed for a declaratory judgment "declaring the right, duties and obligations of the defendant toward plaintiffs arising out of their employment relationship and the profit sharing plan and adjudicating their participation in the plan as part of their employment relationship; that Article 11.1 of the plan is unlawful and void under Tennes-

---

1. 9 U.S.C. § 1–14.
2. The reasons alleged for Article 11.1's invalidity included:
   a. It amounts to a forfeiture;
   b. It restricts competition beyond which is necessary for the protection of the defendant;
   c. It is in violation of § 69–101 T.C.A. in that it lessens competition in the state;
   d. It is without consideration;
   e. It constitutes unnecessary and unreasonable economic hardship upon plaintiffs;
   f. It is contrary to the public policy of Tennessee;
   g. It is an unlawful restraint upon plaintiffs' right to engage in lawful competition with the defendant.

see law and that plaintiffs are entitled to receive all vested profit sharing units credited to their respective accounts for the entire period of their employment. And for all other general and special relief to which they may be entitled."

Without answering the complaint, Merrill Lynch removed the action to the United States District Court for the Western District of Tennessee based upon the undisputed diversity of citizenship existing between the parties. The removal was timely and no motion to remand was made by either plaintiff. Thereupon Merrill Lynch filed in the district court a motion pursuant to § 3 of the Arbitration Act, 9 U.S.C. § 3,[3] to refer the issues in the law suit to arbitration. The motion for stay alleged the plaintiffs had agreed in writing in connection with their employment to abide by the rules of the Board of Governors of the New York Stock Exchange, Rule 347(b) of which provides:

"Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure prescribed elsewhere in these rules."

In their response to the motion to stay proceedings, the plaintiffs acknowledged that they had each submitted an application to the Exchange for approval of employment as a registered representative with Merrill Lynch and had agreed to submit themselves to the jurisdiction of the Exchange and to abide by all existing rules and amendments thereto including Rule 347(b). They denied, however, that their dispute was an arbitrable dispute within the meaning of § 347(b) and denied that their institution of legal proceedings in the Tennessee court violated their agreement.

In a concise memorandum decision, District Judge Bailey Brown granted the stay pending arbitration, ruling that the present case was squarely controlled by the Supreme Court decision in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). Plaintiffs have appealed from this order.

Three issues are presented on this appeal. Plaintiffs first contend that the case was improperly removed from the state court. They cite § 22 of the Securities Act of 1933, 15 U.S.C. § 77v, which provides in part:

"No case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States."

Plaintiffs claim that their interest in the defendant's profit sharing plan is a "security" within the meaning of the 1933 Act, cf. *Tcherepnin v. Knight,* 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967), and that therefore the case was improperly removed to federal court.

We find plaintiffs' contention to be without merit. We note first that nowhere in the complaint have plaintiffs stated a claim "arising under" the 1933 Act. Thus it is difficult to see how § 77v is applicable. In any event, we hold that plaintiffs have waived any right to complain that the removal was improper by their failure to raise the issue by motion to remand in the district court.

No issue concerning the propriety of the removal of this action was raised

---

**3.** 9 U.S.C. § 3 provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

until this appeal. By its terms, § 77v provides for concurrent original jurisdiction in actions brought under the 1933 Act in both the state and federal courts. Thus the district court would have had jurisdiction had the action been brought originally in federal court. In such a case, not involving the jurisdiction of the federal court, a failure to timely object to improper removal waives the objection. *Baggs v. Martin,* 179 U.S. 206, 21 S.Ct. 109, 45 L.Ed. 155 (1900), *Hackler v. Indianapolis and Southeastern Trailways, Inc.,* 437 F.2d 360, 362 (6th Cir. 1971), *Bailey v. Texas Co.,* 47 F.2d 153, 155 (2nd Cir. 1931). See also 1A Moore's Federal Practice (2d ed.), ¶ 0.169[1], p. 1432.

Appellants' second contention is that the district court erred in staying the proceedings under § 3 of the Arbitration Act. Appellants seem to contend that the dispute was not arbitrable within the meaning of the arbitration agreement. Further, they argue that if a stay of the proceedings is upheld, the result would be contrary to a result which would be reached in Tennessee state court, where a stay would not be granted.[4] Thus, appellants contend, the policy enunciated by the Supreme Court in *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), that in diversity cases a different result should not obtain depending upon whether the case is tried in state or federal court, is frustrated by the result reached here.

Appellants have stipulated that their claims arise directly from their employment with Merrill Lynch in interstate commerce. They do not seriously contend that as "account executives", they fall within the exception from coverage in § 1 of the Arbitration Act for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce". Cf. *Dickstein v. DuPont,* 443 F.2d 783, 785 (1st Cir. 1971).

Appellants rely primarily upon two factually analogous Supreme Court opinions to support their contention that a stay of proceedings pending arbitration should not have been granted, *Bernhardt v. Polygraphic Co.,* 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956), and *Merrill Lynch, Pierce, Fenner & Smith v. Ware,* 414 U.S. 117, 94 S.Ct. 383, 38 L.Ed.2d 348 (1973). In his memorandum opinion, Chief Judge Brown analyzed both the *Bernhardt* and *Merrill Lynch* cases and found neither to be controlling here. We agree with his analysis. *Bernhardt* involved a contract not "evidencing a transaction involving commerce" under § 2 of the Act. The court thus ruled that § 3, which would have otherwise required a stay pending arbitration, was not applicable. No contention is made here that the present contract is not covered by the terms of § 2.

*Merrill Lynch, supra,* involved a challenge by former "account executives" of Merrill Lynch to the same provision of the profit sharing plan as is in issue here. The provision was challenged as contrary to California public policy as embodied in its state law. As noted by the district judge, however, the case was litigated entirely in the state courts and the United States Arbitration Act was not therefore involved.

Like the district court, we conceive that the Supreme Court decision in *Prima Paint, supra,* controls the decision here. In *Prima Paint,* the court noted that in passing upon a motion for stay pending arbitration, the federal courts have a very limited scope of inquiry:

> We hold, therefore, that in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate. In so concluding, we not only honor the plain meaning of the statute but also the unmistakably clear congressional purpose

---

4. Plaintiffs have contended that the Tennessee arbitration statutes, T.C.A. § 23.501–519 permit revocation of an arbitration agreement any time before the award is made. They further allege that notice of revocation has been delivered by the plaintiffs to defendants.

that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts. 388 U.S. at 404, 87 S.Ct. at 1806.

■ Here no issues concerning the making or performance of the agreement to arbitrate are present except appellants' contentions that the issues in dispute are not within the scope of the arbitration provision. In view of the broad language used in the arbitration provision embodied in Rule 347(b), and in view of the fact that the controversy clearly arises out of the "employment or termination of employment" of plaintiffs, the dispute was arbitrable.

■ As to appellants' contention that the granting of the stay here conflicts with the policy objectives embodied in *Erie R. Co. v. Tompkins, supra,* this argument was clearly disposed of by Mr. Justice Fortas in *Prima Paint*:

The point is made that, whatever the nature of the contract involved here, this case is in federal court solely by reason of diversity of citizenship, and that since the decision in *Erie R. Co. v. Tompkins,* 304 U.S. 64 [58 S.Ct. 817, 82 L.Ed. 1188] (1938), federal courts are bound in diversity cases to follow state rules of decision in matters which are "substantive" rather than "procedural," or where the matter is "outcome determinative." *Guaranty Trust Co of New York v. York,* 326 U.S. 99 [65 S.Ct. 1464, 89 L.Ed. 2079] (1945). The question in this case, however, is not whether Congress may fashion federal substantive rules to govern questions arising in simple diversity cases. See *Bernhardt v. Polygraphic Co., supra,* [350 U.S.] at 202, and concurring opinion at 208, [76 S.Ct. at 275 and at 279]. Rather, the question is whether Congress may prescribe how federal courts are to conduct themselves with respect to subject matter over which Congress plainly has power to legislate. The answer to that can only be in the affirmative. And it is clear beyond dispute that the

federal arbitration statute is based upon and confined to the incontestable federal foundations of "control over interstate commerce and over admiralty." H.R.Rep.No.96, 68th Cong., 1st Sess., 1 (1924); S.Rep.No.536, 68th Cong., 1st Sess., 3 (1924). 388 U.S. 404, 405, 87 S.Ct. 1801, 1806 (footnotes omitted).

Thus we hold the district judge correctly granted the stay of proceedings here.

■ Finally, at oral argument, we raised the issue *sua sponte* as to whether Powell's claim was properly removed from Chancery Court of Shelby County since from the complaint it appears his claim was only for the sum of approximately $3,000, and thus did not itself meet the $10,000 amount in controversy requirement for federal diversity jurisdiction. While the district court may have lacked subject matter jurisdiction over Powell's claim, had it been filed with Stokes' claim as an original action, cf. *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), we are convinced that Powell's claim was properly removed to federal court under § 1441(c).

28 U.S.C. § 1441(c) provides:

Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

The Supreme Court first interpreted the present § 1441(c) in *American Fire and Casualty Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). In that case, plaintiff brought an action in state court against three defendants seeking damages for a fire loss on property supposedly insured. Diversity existed between plaintiff and two of the defendants, but not the third. The diverse de-

fendants removed the case to federal court.. After plaintiff obtained judgment against one of the diverse defendants, the defendant appealed alleging the case had been improperly removed to federal court.

The Supreme Court upheld the appellant's contention that the case had been improperly removed. The court noted that Congress, in adopting the "separate and independent claim or cause of action" test for removability in the 1948 revision of the removal statutes, had intended to restrict the right of removal from state court. In the context of the controversy involved therein, where plaintiff's claim against each defendant arose from " . . . a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." 341 U.S. at 14, 71 S.Ct. at 540. (Footnote omitted).

We have found no Supreme Court cases or cases from this court interpreting the "separate and independent claim or cause of action" requirement of § 1441(c) in the context of a suit by multiple plaintiffs against a single defendant. The issue has been raised in many other courts, however.[5] The case presented here is in many ways similar to a recent case decided in the Fifth Circuit, *Northside Iron and Metal Co., Inc. v. Dobson and Johnson, Inc.*, 480 F.2d 798 (1973). In *Northside*, eight subcontractors sued two defendants for fraud and deceit in connection with the financing of construction of a government warehouse in Duluth, Georgia. The defendants removed the case to federal court. Plaintiffs challenged the removal, noting that there was not complete diversity between all plaintiffs and defendants, and that not all plaintiffs had claims in excess of the $10,000. The court held that the case was removable under § 1441(c):

> Each of the eight plaintiffs had a separate and independent claim against defendants, which could have been sued upon alone without joinder the other plaintiffs. There was diversity of citizenship between defendants on the one hand, who were citizens of Tennessee, and each of seven of the eight plaintiffs, who are citizens of Georgia or North Carolina. Of these seven plaintiffs, five have claims for compensatory damages which exceed $10,000. Thus, for each of these five claims diversity of citizenship supplies a federal jurisdictional basis, and each, considered separately, was therefore removable to the federal district court under 28 U.S.C.A. § 1441(a). Since some of the independent claims joined in the case were removable, the whole case was properly removable under § 1441(c). 480 F.2d at 801.

As in *Northside, supra*, each plaintiff here makes a separate claim for damages against defendant. Plaintiffs are not trying to enforce joint rights, but are trying to enforce rights wholly individual to them. Finally, each plaintiff could have sued upon his claim alone without joinder of the other, and the claims did not arise from a "single wrong" of defendant. Cf. *American Fire and Casualty Co. v. Finn, supra*. We thus conclude that the entire case was removable under § 1441(c).

The judgment of the district court is affirmed. Costs to appellees.

---

5. *Northside Iron and Metal Co., Inc. v. Dobson and Johnson, Inc.*, 480 F.2d 798 (5th Cir. 1973); *Jong v. General Motors Corp.*, 359 F.Supp. 223 (N.D. Cal. 1973); *U. S. Industries, Inc. v. Gregg*, 348 F.Supp. 1004 (D.C. Del. 1972); *Anderson v. Union Pacific Coal Co.*, 332 F.Supp. 605 (D.C. Wyom. 1971); *Lavan Petroleum Co. v. Underwriters at Lloyds*, 334 F.Supp. 1069 (S.D. N.Y. 1971); *Tenenbaum v. Walter E. Heller & Co.*, 308 F.Supp. 1085 (S.D. N.Y. 1970); *Herrmann v. Braniff Airways, Inc.*, 308 F.Supp. 1094 (S.D. N.Y. 1969), *Orn v. Universal Automobile Ass'n. of Indiana*, 198 F.Supp. 377 (E.D. Wis. 1961); *Reynolds v. Bryant*, 107 F.Supp. 704 (S.D. N.Y. 1951).