**James E. FOX, Plaintiff,**

v.

**MERRILL LYNCH & CO., INC. and Merrill Lynch, Pierce, Fenner & Smith, Incorporated, Defendants.**

**No. 77 Civ. 5769 (MP).**

United States District Court,
S. D. New York.

June 28, 1978.

Avrom S. Fischer, Brooklyn, N.Y., for plaintiff.

Brown, Wood, Ivey, Mitchell & Petty, New York City, by Roger J. Hawke, Thomas J. Mullaney, New York City, for defendants.

## DECISION

POLLACK, District Judge.

This is a motion by defendants for a stay of this lawsuit pending an arbitration which has been demanded by defendants.

In this action, plaintiff James E. Fox seeks damages on account of the determination by defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch) that Fox has forfeited his right to a pension from Merrill Lynch. Defendants' application for a stay is made pursuant to 9 U.S.C. § 3. Arbitration of the dispute is sought under an agreement that disputes of the parties should be settled in accordance with Rule 347 of the New York Stock Exchange (NYSE). Plaintiff opposes the motion on the grounds, *inter alia*, that he is not bound by any agreement to arbitrate and that law and public policy forbid compelling him to arbitrate certain of the claims asserted herein.

For the reasons hereafter set forth, the aspects of this controversy which are appropriate for arbitration are severable from and predominate over the non-arbitrable claims. Accordingly, in the interests of economy and justice, a stay will be granted to permit arbitration of the arbitrable claims before consideration of the remainder.

Defendant Merrill Lynch is a broker-dealer and a member of the NYSE.[1] It employed Fox for 18 years approximately from 1955 until 1973, primarily as an institutional salesman. The company instituted an employee pension plan in 1959. As amended through 1973, this provided that employees who remained with Merrill Lynch until after the age of forty and had participated in the plan for at least ten years were entitled to a pension upon reaching the age of forty-five. Fox participated in the plan from 1959 onward and when he reached forty years of age in 1972 he had met the minimum ten year employment requirement and would have been entitled upon his forty-fifth birthday in 1977 to a pension under the plan.

The plan also provided, however:

A participant who enters employment or engages directly or indirectly in any business deemed by the [Administrative] Committee to be competitive with the business of any Employer or any Subsidi-ary shall forfeit all rights to any benefits due or to become due from the Trust Fund, other than those attributable to Voluntary Contributions.

Fox left Merrill Lynch voluntarily in 1973 to take employment as a branch manager with two other stockbrokerage firms, first Clark Dodge & Co. and then Dean Witter & Co. In 1975, the Administrative Committee advised him that his prospective benefits under the Pension Plan had been forfeited on account of his employment with competing firms.

Fox instituted this suit on November 29, 1977. His complaint alleges that the forfeiture of his pension benefits was inconsistent with the terms of the plan. He complains further that Merrill Lynch failed to warn him of the possibility of such a forfeiture when, before leaving the company in 1973, he discussed the possibility of accepting employment with Clark Dodge & Co., or in 1974 when he inquired concerning his pension shortly before accepting the position at Dean Witter & Co.

The first two counts of Fox's amended complaint allege that defendants breached their *contractual* obligations under the pension plan. In Count One the claimed contractual breach is posited on the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* (ERISA). In counts three and four, by way of anticipation Fox alleges that defendants have waived and are estopped from relying on the plan's forfeiture provision. The several remaining counts of the complaint set forth *noncontractual* theories opposing arbitration, primarily that the forfeiture constitutes a restraint of trade in violation of state and federal antitrust laws.

The Court's jurisdiction is alleged to rest on the grounds that the action arises under ERISA, as well as diversity of citizenship and requisite amount in controversy.

 Fox's alleged agreement to arbitrate disputes arises from his employment agreement with Merrill Lynch which incor-

---

**1.** Defendant Merrill Lynch & Co. is the controlling parent of Merrill Lynch, formed in 1973.

porates therein the Rules of the NYSE. That constitutes a provision in "a contract evidencing a transaction involving commerce," 9 U.S.C. § 2. *Dickstein v. DuPont*, 443 F.2d 783, 784–85 (1st Cir. 1971). Accordingly, federal law governs all questions regarding the interpretation, validity and enforceability of the arbitration agreement. *Coenen v. R. W. Pressprich & Co.*, 453 F.2d 1209, 1211 (2d Cir.), *cert. denied*, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972). Issues concerning the validity and enforceability of an asserted arbitration agreement properly are determined upon a motion to stay pursuant to 9 U.S.C. § 3. *See American Safety Equipment Corp. v. J. P. Maguire & Co.*, 391 F.2d 821, 826 (2d Cir. 1968).

Fox agreed to arbitrate the contractual dispute he asserts. In 1957, Fox and Merrill Lynch applied for and obtained the NYSE's approval for the company to employ Fox as a registered representative. In the application, Fox agreed

> to abide by the Constitution and Rules of the Board of Governors of the New York Stock Exchange *as the same have been or shall be from time to time amended*, and by all the rules and regulations adopted pursuant to the Constitution, and by all the practices of the Exchange. (Emphasis added).

In 1958, (prior to adoption of the pension plan here involved) the NYSE adopted Rule 347(b), providing: ⋅

> Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure prescribed elsewhere in the rules.

The provision is still in effect, presently as Rule 347.

■ Whether a party has agreed to arbitration is determined on the basis of ordinary contract principles. A valid arbitration provision must be in writing, but a party may be bound by that provision without having signed an exemplar. *A/S Cus-*

*todia v. Lessin International, Inc.*, 503 F.2d 318, 320 (2d Cir. 1974); *Fisser v. International Bank*, 282 F.2d 231, 233 (2d Cir. 1960).

■ Fox is bound by Rule 347 for two reasons. First, he agreed in 1957 to abide by the NYSE Rules as thereafter amended. A party who agrees to abide by the rules of an organization is bound by its subsequently adopted rule calling for arbitration. *See* M. Domke, The Law and Practice of Commercial Arbitration § 7.02 (1968). The Minnesota Supreme Court reached the same conclusion on an indistinguishable set of facts in *Moritz v. Francis I. DuPont & Co.*, 291 Minn. 523, 180 N.W.2d 487 (1971) (*per curiam*).

■ Second, even if Rule 347 as such was not binding on Fox upon adoption, it was tacitly adopted by Fox as a modification of his employment agreement with Merrill Lynch. Parties may modify their contractual obligations by an agreement reasonably to be understood from their conduct. *See Dow Chemical Co. v. S.S. Giovannella D'Amico*, 297 F.Supp. 699, 707 (S.D.N.Y. 1969); 3 A. Corbin, Contracts § 564, at 297 (2d ed. 1960). Fox represented that he would abide by the NYSE Rules in 1957. After Rule 347 was adopted in 1958, he remained in the employ of Merrill Lynch, apparently without protest, for a year before the pension plan was instituted, twelve years before he acquired a right to benefits, and fifteen years in all.

■ The arbitration agreement applies to the instant controversy. Rule 347 provides for arbitration of "[a]ny controversy . . arising out of . . . employment or termination of employment." This action arises out of an alleged forfeiture of pension benefits which were offered as compensation for services. Thus, it relates directly to Fox's employment. *See Stokes v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 523 F.2d 433, 437 (6th Cir. 1975) (*dictum*).

Plaintiff contends that Rule 347 is unenforceable on antitrust grounds. *Drayer v. Krasner*, 572 F.2d 348, 353–60 (2d Cir. 1978), rejected a similar contention. The Court of Appeals held, first, that Rule 347 is to be

tested under the rule of reason because it does not constitute a "classic" boycott and because it is within the self-regulatory authority of the NYSE and subject to SEC oversight. *Id.* at 355–59. Second, the Court held that, taking into account the composition of NYSE arbitration panels, Rule 347 was permissible under the rule of reason in the absence of evidence of actual unfairness in the operation of such panels. *Id.* at 359. Fox makes conclusory allegations, self-confessedly based in part on hearsay, that NYSE arbitration tribunals are unfair to registered representatives. However, upon competent evidence of partiality, Fox would have the opportunity to move to have the arbitration award set aside pursuant to 9 U.S.C. § 10. Accordingly, this motion furnishes no occasion to depart from the Court of Appeals' holding, sustaining Rule 347 from attack on antitrust grounds.

Law and public policy offer no obstacle to compelling Fox to arbitrate his claim under ERISA. Fox relies on *Lewis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 431 F.Supp. 271 (E.D.Pa.1977), which held that Rule 347 was unenforceable as applied to the claims asserted pursuant to ERISA in that action. It proves unnecessary to consider whether *Lewis* was properly decided, because it is distinguishable from the instant action, and may not properly be extended to this case.

*Lewis* arose from facts similar to those presented here. The plaintiff asserted a number of claims pursuant to ERISA, including claims against the pension plan fiduciaries in their individual capacities, for breach of the fiduciary duties imposed by ERISA. *See* 431 F.Supp. at 276. In holding that plaintiff could not be required to arbitrate his claims, the court relied primarily on ERISA § 410(a), 29 U.S.C. § 1110(a), which provides:

Except as provided in [sections not here material], any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part [ch. 18, pt. 4, 'Fiduciary Responsibility'] shall be void as against public policy.

The Court held that an arbitration agreement as applied to claims of breach of fiduciary duties imposed by ERISA would have the effect of relieving the fiduciary from liability, and thus was void. Finally, the Court denied a stay with respect to all claims, including those not relating to fiduciaries, on the ground that it would be inefficient to split the action. 431 F.Supp. at 276–77.

*Lewis* also referred to two contexts in which the effect of arbitration provisions has been limited even though no applicable statute specifically voids exculpatory clauses. First, arbitration agreements will not be given effect to compel arbitration of antitrust claims. *E.g., American Safety Equipment Corp. v. J. P. Maguire & Co.,* 391 F.2d 821, 825–28 (2d Cir. 1968). Second, resort to the arbitration procedure created by a collective bargaining agreement does not bar a subsequent action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* even if the two proceedings arise from the same facts. *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).

Unlike *Lewis,* it seems that the only ERISA claim asserted herein is made pursuant to section 502(a)(1)(B), 29 U.S.C.A. § 1132(a)(1)(B). That section creates a federal cause of action to enforce rights under the terms of an employee benefit plan. ERISA does not specify the law applicable to such actions: rather, the federal courts are intended to create an applicable body of federal common law, as they have with respect to section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). *See,* H.R.Rep. No. 93–1280, 93d Cong., 2d Sess. 327 (1974), U.S.Code Cong. & Admin. News 1974, p. 4639. Fox does not allege that either of the defendants are fiduciaries, or that they breached fiduciary duties imposed by ERISA. Nor does he rely on the vesting and nonforfeitability standards set forth in section 203 of ERISA, 29 U.S.C. § 1053. Section 211(b)(2) of the Act, 29 U.S.C. § 1061(b)(2), which provides that sec-

tion 203 shall not apply to plans in existence on January 1, 1974 until the first plan year beginning after December 31, 1975, has been construed to render section 203 inapplicable to claims by persons who left their employment with the plan sponsor before the end of 1975. *Schlansky v. United Merchants & Manufacturers, Inc.*, 443 F.Supp. 1054, 1063–64 (S.D.N.Y.1977).

Thus, the express provision voiding exculpatory clauses relied on in *Lewis,* applicable only to liability for breach of fiduciary duty, has no bearing on this case. Further, the other authorities referred to in *Lewis* are unpersuasive with respect to the instant action. Three considerations underlie the holdings that antitrust claims are not subject to compulsory arbitration: (1) antitrust actions promote a competitive national economy, and thus affect more than mere private interests; (2) such actions involve complex issues and extensive evidence, and thus are better resolved through judicial than through arbitral procedures; and (3) the determination of antitrust claims should not be entrusted to commercial arbitrators because they often are businessmen, themselves subject to antitrust regulation. *Cobb v. Lewis,* 488 F.2d 41, 47 (5th Cir. 1974); *American Safety Equipment Corp. v. J. P. Maguire & Co.,* 391 F.2d 821, 826–27 (2d Cir. 1968). None of these considerations apply to this case: (1) only a private contractual obligation is in issue; (2) this contractual claim involves no complex issues or extensive evidence but is akin to the commercial disputes regularly adjusted through arbitration; and (3) arbitrators are as likely to identify with plaintiff on the ground that they themselves are pension plan participants as they are to identify with companies which sponsor pension plans.

Likewise, in holding that a Title VII claim is not barred by a prior arbitration based on the same facts pursuant to a collective bargaining agreement, the Supreme Court in *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) took into account that (1) Title VII claims vindicate not only private interests but a congressional policy of the "highest priority" against employment discrimina-

tion, *id.* at 45, 47, 94 S.Ct. 1011; (2) the elaborate and overlapping remedies created by Title VII evince an intent that it should supplement existing rights and remedies, *id.* at 47–49, 94 S.Ct. 1011; and (3) industrial arbitration, established by private agreement, is appropriate primarily for adjusting disputes involving private contractual obligations rather than the rights based on public law asserted by a Title VII claimant, *id.* at 52–54, 56–57, 94 S.Ct. 1011. In contrast, Fox's ERISA claim asserts rights arising from a private employment contract. Far from legislating substantive standards reflecting urgent public policies, or creating elaborate remedial procedures, Congress has left the development of the law applicable to claims under ERISA section 502(a)(1)(B) to the federal courts, *see* H.R.Rep. No. 93–1280, 93d Cong., 2d Sess. 327 (1974).

It is significant that when Congress included in ERISA a provision voiding exculpatory provisions, it limited its application to liability for breach of fiduciary duty. The Court finds no basis in connection with claims under section 502(a)(1)(B) of ERISA to deny effect to Congress' intention, expressed in the Federal Arbitration Act, to promote arbitration in accord with the intent of the parties, *see, e.g., Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402, 410 (2d Cir. 1959), *cert. dismissed per stipulation,* 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960).

█ Arbitration may not be compelled on the basis of a prospective arbitration agreement with respect to claims arising under the antitrust laws of either the United States, *American Safety Equipment Corp. v. J. P. Maguire & Co.,* 391 F.2d 821, 825–28 (2d Cir. 1968), or New York. *Aimcee Wholesale Corp. v. Tomar Products, Inc.,* 21 N.Y.2d 621, 289 N.Y.S.2d 968, 237 N.E.2d 223 (1968); *see Bradford v. New York Times Co.,* 501 F.2d 51, 61 (2d Cir. 1974) (dictum). Accordingly, Fox is not obliged to submit to arbitration those claims set forth in his complaint which arise under federal or state antitrust laws.

If it is not practical to separate a party's arbitrable and nonarbitrable claims, it may be appropriate to deny arbitration of any of the claims, or to defer arbitration until after adjudication of the nonarbitrable disputes. *Sibley v. Tandy Corp.*, 543 F.2d 540, 543 (5th Cir. 1976), *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977) (dictum); *see American Safety Equipment Corp. v. J. P. Maguire & Co.,* 391 F.2d 821, 828 (2d Cir. 1968); *Shapiro v. Jaslow,* 320 F.Supp. 598, 560 (S.D.N.Y.1970). However, if the arbitrable and nonarbitrable portions of the controversy are separable, it is proper to stay judicial proceedings pending arbitration. *Sibley v. Tandy Corp., supra,* at 542–44; *see Tepper Realty Co. v. Mosaic Tile Co.,* 259 F.Supp. 688, 693 (S.D.N.Y. 1966) (semble).

In the instant case, it is appropriate to stay judicial proceedings on the antitrust claims pending arbitration of the balance of this controversy. Fox's contractual claims under the terms of the pension plan turn on the construction of the plan provisions and questions of waiver and estoppel, which are substantially distinct from the issues raised by his antitrust challenge to the forfeiture provision. Further, Fox's antitrust claims will be moot if he prevails on his contention that the forfeiture provision may not be applied to deny him his pension benefits on account of contract law considerations. Thus, in *Sibley v. Tandy Corp.,* 543 F.2d 540 (5th Cir. 1976), *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977), plaintiff asserted arbitrable contract claims premised on the assertion that a written agreement was in accord with, or should be reformed to accord with, defendants' prior oral representations. In addition, plaintiff asserted a nonarbitrable claim for securities fraud, premised on an allegation that the written agreement did *not* accord with defendants' oral representations. The trial court denied a stay pending arbitration, and proceeded to trial on all claims. The Court of Appeals reversed, and remanded with directions to stay judicial proceedings pending arbitration.

Accordingly, defendants' motion is granted in part and denied in part. This action shall be stayed pending arbitration of plaintiff's claims, other than his claims pursuant to state and federal antitrust law. So much of the state and federal antitrust claims as remain viable may be asserted in proceedings before this Court after the arbitration proceedings are concluded.

Motion granted in part and denied in part.

SO ORDERED.