Thomas C. LEWIS

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., et al.

Civ. A. No. 76–2882.

United States District Court, E. D. Pennsylvania.

April 21, 1977.

Robert S. Ryan, Amy F. Davis, Drinker, Biddle & Reath, Philadelphia, Pa., for plaintiff.

C. Clark Hodgson, Jr., Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

HANNUM, District Judge.

Presently before the Court is defendants' motion to stay proceedings pending arbitration pursuant to 9 U.S.C. § 3 [1] in this action under the Employees Retirement Income Security Act of 1974 (ERISA). The issue for determination is whether a prospective agreement to arbitrate disputes arising out of termination of employment compels a former employee to submit his ERISA claims to arbitration rather than adjudication in the federal courts.

From February 1955 until March 1975, the plaintiff Thomas C. Lewis was employed by defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch), serving in the capacity of account representative during most of his tenure. On December 1, 1957, Lewis became a participant in the Merrill Lynch Pension Plan and so remained until he resigned in May of 1975 to join the Philadelphia office of Kidder, Peabody & Co., a competing securities firm. In April of 1975, prior to his leaving Merrill Lynch, Lewis was informed that his pension rights were 100% vested based on his age and number of years as a plan participant. However, the Merrill Lynch Pension Plan provides that:

> A Participant who enters employment or engages directly or indirectly in any business deemed by the Committee to be competitive with the business of any Employer or any Subsidiary shall forfeit all rights to any benefits due or to become due from the Trust Fund, other than those attributable to Voluntary Contributions.

Accordingly, in October of 1975 after Lewis had joined a competitor, he was informed that his pension rights were forfeited. In September 1976, Lewis instituted this suit against Merrill Lynch, the Merrill Lynch Pension Plan and individual plan administrators claiming violations of ERISA in connection with the forfeiture of his pension rights.

Defendants seek a stay of proceedings in this Court pending arbitration on the basis of what they construe to be an agreement to arbitrate stemming from forms signed by plaintiff in 1955. In order to become a registered representative, Lewis was required to file with the New York Stock Exchange (NYSE), of which Merrill Lynch is a member, a signed copy of form RE–1 which states in paragraph 31:

> . . . in consideration of the New York Stock Exchange's approving my application, I submit myself to the jurisdiction of such Exchange, and I agree as follows:
>
> .  .  .  .  .
>
> (g) I am familiar with the rules and regulations of the New York Stock Exchange pertaining to the employment of so-called registered employees, and I agree to abide by the existing rules and all amendments thereto.

One such amendment to the NYSE rules, originally passed in 1958, is Rule 347 which provides:

> Any controversy between a registered representative and any member or member organization arising out of the employment or termination of employment of such registered representative by and with such member or member organization shall be settled by arbitration, at the instance of any such party, in accordance with the arbitration procedure prescribed elsewhere in these rules.

It is defendants' contention that form RE–1 and the subsequently instituted Rule 347, construed together, constitute Lewis' agreement to arbitrate the present dispute over forfeiture of his pension rights. Lewis

---

1. 9 U.S.C. § 3 provides:

    If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

resists arbitration, preferring instead to have his rights determined in the federal courts. He contends first, that there was no agreement to arbitrate and second, that a prospective agreement to arbitrate disputes arising out of termination of employment is void as to ERISA claims.

◼ We express no opinion here on whether the constructive agreement to arbitrate urged by defendants is binding in these circumstances, but assume the existence of an arbitration agreement *arguendo* in order to address the paramount issue of whether an agreement to arbitrate executed before the fact is valid to force arbitration of ERISA claims. For the reasons which follow, we conclude that it is not.

◼ The present posture of this case finds the policies of the Federal Arbitration Act and ERISA at loggerheads. Decision of this case requires the Court to balance the strong competing interests supporting these Acts and select the more ponderous. The United States Arbitration Act is the statutory expression of the federal policy favoring arbitration as an alternate means of dispute resolution. Particularly in the commercial sphere, it is a pervasive policy not to be lightly overridden. ERISA represents Congress's equally strong statement of its desire to give pension plan participants maximum protection. Section 2(b) of ERISA declares the legislature's intention

> to protect . . . the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

◼ The Act contains numerous provisions directed to each of these areas. Responsive to the policy of ready access to Federal courts is Section 502, pursuant to which plaintiff brings this suit which provides special rights of action to recover for violation of duties and responsibilities under the Act. A potential plaintiff is granted a wide choice of Federal court venue, liberal service of process rules, and relief from the requirement of $10,000.00 in controversy. In addition, Section 502(d)(1) specifically makes an employee benefit plan a suable entity. A carefully particularized federal cause of action such as this, contained in important federal remedial legislation competes substantially with the Federal Arbitration Act policy.

For assistance in reconciling the digladiating legislative policies here involved, it is appropriate to inquire how courts have resolved this dilemma with respect to other relevant federal laws. Frequently, rights granted under other important federal protective legislation have been found to be inappropriate for arbitration and prior waivers of federal remedies under these laws have been invalidated. Prime examples are the securities laws, *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953); *Ayres v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 538 F.2d 532 (3d Cir.), *cert. denied,* 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976), the antitrust laws, *Cobb v. Lewis,* 488 F.2d 41 (5th Cir. 1974); *American Safety Equipment Corp. v. J. P. Maguire & Co.,* 391 F.2d 821 (2d Cir. 1968), and Title VII of the Civil Rights Act of 1964, *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). In the leading case of *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), the Supreme Court held that an agreement to arbitrate disputes arising out of securities transactions between a customer and a broker could not force an action under Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2) to arbitration. The agreement was found void under Section 14 of the Act which provides:

> Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void.

The arbitration agreement was termed a "stipulation" and the right to select the

judicial forum was characterized as "the kind of 'provision' that cannot be waived under § 14 of the Securities Act." 346 U.S. at 435, 74 S.Ct. at 186. The Court stressed the unequal bargaining power of securities purchasers and sellers noting Congress's strong intention to protect buyers. The seller's argument also made by defendants in the present case, that arbitration is merely an alternate form of dispute resolution fully compatible with federal protective legislation was rejected. The Court reasoned:

> When the security buyer, prior to any violation of the Securities Act, waives his right to sue in courts, he gives up more than would a participant in other business transactions. The security buyer has a wider choice of courts and venue. He thus surrenders one of the advantages the Act gives him and surrenders it at a time when he is less able to judge the weight of the handicap the Securities Act places upon his adversary . . .

> Even though the provisions of the Securities Act, advantageous to the buyer, apply, their effectiveness in application is lessened in arbitration as compared to judicial proceedings . . . This case requires subjective findings on the purpose and knowledge of an alleged violator of the Act. They must be not only determined but applied by the arbitrators without judicial instruction on the law. As their awards may be made without explanation of their reasons and without a complete record of their proceedings, the arbitrators' conception of the legal meaning of such statutory requirements as "burden of proof," "reasonable care" or "material fact," . . . cannot be examined. Power to vacate an award is limited . . . As the protective provisions of the Securities Act require the exercise of judicial direction to fairly as-

sure their effectiveness, it seems to us that Congress must have intended § 14, to apply to waiver of judicial trial and review. 346 U.S. at 435–37, 74 S.Ct. at 187.

Following the rationale of *Wilko,* the Third Circuit in *Ayres v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 538 F.2d 532 (3d Cir.), *cert. denied,* 429 U.S. 1010, 97 S.Ct. 542, 50 L.Ed.2d 619 (1976), held that agreements to arbitrate disputes falling under the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq., are void under Section 29(a) of that Act.[2]

The Congressional purpose behind ERISA dictates that it should receive a similar interpretation. ERISA was passed to protect pension plan participants and beneficiaries from perceived abuses [3] just as the securities laws were instituted to protect investors.[4] From a practical standpoint the two groups are in similar circumstances, at the mercy of pension plan sponsors and administrators or securities sellers and brokers, each better informed and in a superior bargaining position. In addition, a pension plan participant is in reality an indirect securities investor, making his investments through an institutional intermediary, his pension plan. His interest in his pension is intended to sustain him after his working years just as though he had purchased securities directly for the same purpose with money given him as salary or wages in lieu of employer contributions to the pension plan. The same potential which exists for fraud and overreaching between securities sellers and purchasers exists between pension plans, their sponsors and administrators as pension "sellers" and plan participants and beneficiaries as "buyers." In short, a pension plan participation is in many ways comparable to a security and ERISA may logically be considered the most recent stride in Congress's grand

---

**2.** Section 29(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc(a), provides:

Any condition, stipulation, or provision binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void.

**3.** H.R.Rep. No. 93–533, 93d Cong., 2d Sess. reprinted in [1974] U.S.Code Cong. & Ad.News at P. 4639.

**4.** H.R.Rep. No. 85, 73d Cong., 1st Sess. 2; S.Rep. No. 47, 73d Cong., 1st Sess. 1.

march to modify the rule of *caveat emptor* as applied to securities transactions. It is thus reasonable to assume that in passing ERISA Congress intended to protect plan participants from arbitration and similar agreements, often unilaterally imposed, which "snip and whittle" at federally granted rights, at least as well as it had securities purchasers under the securities laws.

■ Indeed to this end ERISA contains a provision similar to Section 14 of the Securities Act of 1933 and Section 29(a) of the Securities Exchange Act of 1934 in Section 410(a) which provides:

(a) Except as provided in sections 405(b)(1) and 405(d) [5] any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy.

Although Section 410(a) may not have so broad a scope as Sections 14 and 29(a), since in terms it applies only to fiduciaries and not the plan itself, and the sponsor, at least as applied to fiduciaries sued in their individual capacities in this action, it voids an arbitration provision under principles established in *Wilko v. Swan, supra.* No purpose would be served by trifurcating the action, sending claims against the plan and its sponsor to arbitration while litigating the identical claims against the fiduciaries in this Court.

■ There can be no question that the arbitration agreement here in issue constitutes an "agreement" within the meaning of Section 410(a). This agreement "purports to relieve a fiduciary from responsibility or liability for [a] responsibility, obligation or duty" under the fiduciary provisions

**5.** Neither exception applicable here.

**6.** Section 409(a) of ERISA provides:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to

of ERISA in the following fashion. Title I, part 4 of ERISA charges fiduciaries with certain duties and standards of conduct which go beyond those required under the common law of trusts. Plaintiff in his complaint alleges violations of these provisions by enforcing an invalid forfeiture clause, failing to inform plaintiff that the plan would soon be amended to eliminate the forfeiture clause, and failing to accord plaintiff his procedural rights under ERISA to review of his pension forfeiture. Section 409(a) [6] makes fiduciaries liable for breaches of duty, subjecting them to such equitable or remedial relief as the Court may deem appropriate. The procedural vehicle for enforcing this liability is provided by Section 502(a)(2) [7] which grants a civil action for relief under Section 409 and provides part of the jurisdictional basis for plaintiff's suit. Section 502 goes on to grant the liberal venue and jurisdictional provisions previously referred to.

■ When the above is drawn together it is evident that an agreement to arbitrate relieves a fiduciary from at least some of the duties imposed by suit under Section 502(a)(2) to enforce liabilities imposed by section 409(a). Under section 502, a fiduciary is subject to suit under liberal venue and jurisdictional provisions. Under an arbitration agreement the fiduciary may only be held to answer in the manner contractually provided. Since answering a suit under section 502(a)(2) is a consequence of liability under section 409(a), it may be said that an arbitration agreement relieves a fiduciary of liability if advantages such as liberal venue and jurisdiction are considered aspects of liability. The Court finds such a construction warranted.

such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 411 of this Act.

**7.** Section 502(a)(2) of ERISA provides:

A civil action may be brought—

\*　　\*　　\*　　\*　　\*　　\*

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 409;

It might be argued that such an all inclusive construction of the term "liability" is erroneous; that any imposition of the duty to pay whether by an arbitrator or a court exhausts the parameters of "liability." However, in an analogous situation, the Supreme Court placed just such a broad construction on the term "liability" in considering federal protective legislation. In *Boyd v. Grand Trunk Western R. Co.*, 338 U.S. 263, 70 S.Ct. 26, 94 L.Ed. 55 (1949), the Court held that a contractual restriction of venue for an action under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq., was void under Section 5 of the Act which provides "any contract . . ., the purpose or intent of which shall be to enable any common carrier to exempt itself from any *liability* created by this Act, shall to that extent be void . . ." (emphasis added). This holding indicates that venue provisions, expanded jurisdiction and other "fringe benefits" of federal court statutory actions are attributes of "liability" under federal protective legislation. The right to select the forum and the mode of trial is part and parcel of "liability," itself. See also, *Wilko v. Swan, supra*, 346 U.S. at 437, 74 S.Ct. 182.

■ Even without the specific provisions of anti-exculpatory sections, important federal legislation of the stature of ERISA has been held inappropriate for arbitration. Cases such as *Wilko v. Swan* and *Ayres v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra*, appear to be grounded in specific non-waiver provisions of the securities laws. However, *Cobb v. Lewis* and *American Safety Equipment Corp. v. J. P. Maguire & Co., supra* invalidate agreements to arbitrate antitrust claims without benefit of such provisions.[8] See also, *A & E Plastic Pak Co. v. Monsanto Co.*, 396 F.2d 710 (9th Cir. 1968); *Helfenbein v. International Industries, Inc.*, 438 F.2d 1068 (8th Cir.) *cert. denied*, 404 U.S. 872, 92 S.Ct. 63, 30 L.Ed.2d 115 (1971). Also, most significantly, in *Al-*

*exander v. Gardener-Denver Co., supra*, the Supreme Court found a prior arbitration pursuant to a collective bargaining agreement no bar to a suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., on the same issue. If the right to sue under Title VII cannot be waived by going through an arbitration proceeding then *a fortiori* it cannot be waived by a mere prospective agreement to arbitrate. The Court stated that waiver of the right to sue under Title VII "would defeat the paramount congressional purpose . . . An employee's rights under Title VII are not susceptible of prospective waiver. See *Wilko v. Swan . . .*" The citation of *Wilko v. Swan* is significant for it indicates that the Court felt that the rationale of that case transcends the specific non-waiver provision there involved and may apply to any federal protective legislation found inappropriate for arbitration by reason of its importance.

For reasons previously suggested, ERISA clearly fits within this category. In addition, if ERISA claims were subject to arbitration agreements, employers could require such agreements as conditions to participation in the pension plan, thereby excising the generous rights granted under § 502 and frustrating the congressional purpose to provide ready access to federal courts expressed in Section 2(b).

As we have already noted, the competing policies of the Federal Arbitration Act and ERISA are not easily reconciled. Arbitration provides disputants with "a prompt, economical and adequate solution of controversies . . . if the parties are willing to accept less certainty of legally correct adjustment." *Wilko v. Swan, supra* at 438, 74 S.Ct. at 188. It is highly favored in the general case. However, ERISA was enacted to protect pension plan participants and beneficiaries. Exculpation from any of the rights conferred cannot be permitted if the

---

**8.** Paragraph 23 of the plaintiff's complaint alleges that by virtue of Merrill Lynch's dominant position in the brokerage business, the Merrill Lynch Pension Plan provision causing a forfeiture of vested pension rights upon em-

ployment by a competitor violates section 1 of the Sherman Act, 15 U.S.C. § 1. Thus, at least to this extent, this case is inappropriate for arbitration.

Act is to remain faithful to its mandate. Recognizing the strong policies favoring prior agreements to arbitrate the Court nevertheless believes that the promises of ERISA to pension plan participants are best kept by holding prospective agreements to arbitrate ERISA claims invalid.