Lonell BROWN and Carl Poppell,
Plaintiffs,

v.

The BABCOCK AND WILCOX COMPANY and the Babcock and Wilcox Company Pension Board, Defendants.

Civ. A. No. 283–102.

United States District Court,
S.D. Georgia,
Brunswick Division.

Feb. 7, 1984.

Edward E. Boshears, Brunswick, Ga., for plaintiffs.

Richard M. Scarlett, Brunswick, Ga., William A. Ziegler, New York City, for defendants.

## ORDER

ALAIMO, Chief Judge.

This is an action brought under Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. Plaintiffs are two ex-employees of the now idle Brunswick plant operated by defendant Babcock and Wilcox Company ("the Company"). This suit is a companion case to *Chesser v. Babcock and Wilcox Company, et al.*, CV 283–83, wherein the Court granted summary judgment in favor of the Company and its Pension Board as to the pension claims asserted by some 40 ex-employees of the Company. The present action is now before the Court on defendants' motion for summary judgment.

## FACTS

Plaintiffs were employed at the Company's Brunswick plant until their termination in April, 1982. Plaintiff Poppell appar-

ently has a back problem which caused him to be away from the job for substantial periods of time beginning in August of 1980. In anticipation of the Company's plant-wide closure, Poppell was terminated from the Company's employ on April 2, 1982. Prior to his termination, Poppell applied for a disability retirement pension under ¶ 4 of Section IV of the Service Benefit Pension Plan ("the Plan") in effect at that time. By a letter dated July 26, 1982, Poppell was notified of the Pension Board's decision to deny his requested disability pension. The reason given for the denial was the determination of the Pension Board-selected physicians, Doctors Parke and Brown, that plaintiff was not totally and permanently disabled as required by the Plan. On September 27, 1982, Poppell inquired into the appeal procedure available to claimants upon the initial denial of a pension application. Pursuant to this request, Poppell was advised by a Board representative to direct his appeal to the Manager of Employee Benefits at McDermott, Inc., the parent company of Babcock and Wilcox.

With respect to plaintiff Brown's application for a disability retirement pension, he was forced to cease work because of a back injury sustained on August 20, 1980. He was dismissed from Company employ on April 3, 1982, and applied for a disability retirement pension in July of 1982. Unlike Poppell, Brown was determined by the Board-selected physicians to be totally and permanently disabled. Nevertheless, Brown's request for a disability pension was denied by letters dated September 30 and November 24, 1982. The Board's reason was that Brown had signed a form acknowledging that his employment had been terminated for all purposes on the date of his discharge and that this waiver occurred prior to the Board's receipt of Brown's disability application.

**DISCUSSION**

In their complaint, as further explained in their responsive briefs, plaintiffs are claiming generally that the Pension Board denied them their disability retirement pen-

sions in violation of the ERISA statute. Plaintiffs argue that the Board breached its ERISA-based fiduciary duty by denying their applications for different reasons, even though they both executed the same form letter acknowledging the termination of employment for all purposes. Plaintiffs also claim that, because they were both disabled well before the plant closing, their disability pension rights were vested and, therefore, protected by ERISA's nonforfeiture provisions.

In their motion for summary judgment, the Pension Board and Company claim variously that plaintiffs have failed to exhaust their administrative remedies. In the alternative, defendants assert that they are entitled to a judgment on the merits as to each of the claims asserted in this suit by the plaintiffs. Based on a thorough reading of the parties' arguments and the applicable law, the Court will resolve the present motion by an analysis of defendants' claims that plaintiffs failed to exhaust their administrative remedies.

### A. Exhaustion of Collective-Bargaining Agreement's Arbitration-Grievance Procedure

■ Defendants, in moving for summary judgment, argue that plaintiffs' suit is barred as a result of their failure to exhaust the grievance-arbitration procedure as spelled out in the Collective Bargaining Agreement (the "CBA"). The CBA, entered into by the union representing all hourly employees at the Brunswick plant and the Company, called for the Company to provide a pension plan for all employees. Additionally, Articles 6 and 7 of the CBA provided for a grievance-arbitration process to settle all disputes arising between employees and the Company. Based on these provisions, defendants assert that plaintiffs' pension claims in this suit amount to a dispute between the Company and plaintiffs within the meaning of Articles 6 and 7 of the CBA and, therefore, are subject to the mandatory grievance-arbitration procedure contained in the CBA.

In support of this argument, defendants cite an array of cases dealing with standard employee-employer disputes, such as wrongful termination and failure to promote. Obviously, such cases do not shed light on a case invoking the Court's jurisdiction under ERISA.

Additionally, defendants cite several ERISA cases dealing with the exhaustion of arbitration procedures set up by the terms of the pension plan itself. *See, e.g., Challenger v. Local Union No. 1 of Intern. Bridge,* 619 F.2d 645 (7th Cir.1980); *Mahan v. Reynolds Metal Co., et al.,* 569 F.Supp. 482, 116 D.L.R. D-1 (E.D.Ark. 1983); *Sample v. Monsanto,* 485 F.Supp. 1018 (E.D.Mo.1980). These cases would warrant further consideration had the Company's Plan made specific reference to the contractual grievance provisions contained in the CBA as the exclusive remedy for claims benefits. Nowhere in the Plan, however, is there reference to mandatory arbitration procedures to resolve eligibility disputes.

Thus, defendants' argument is reduced to an attempt to impose upon ERISA claimants a twin exhaustion requirement. This argument, if accepted, would require a claimant to go first to the pension trustees and exhaust the administrative remedies provided by the terms of the plan. Second, a claimant receiving an adverse decision at the hands of the trustees would then be required to take up a grievance with his employer with resort to binding arbitration in the event that no claim settlement is reached. The Court finds no support for such a proposition in any case authority.[1]

Moreover, the argument ignores the fact that the Plan itself gives to the Pension Board the sole authority to decide questions of eligibility. Section VII, ¶ 6 of the Plan provides that:

> [t]he Pension Board shall have the exclusive right to interpret the Plan and to decide any and all matters arising hereunder, including the right to remedy possible ambiguities, inconsistencies, or omissions. All interpretations, determinations, and decisions of the Pension Board ... in respect to any matter hereunder shall be conclusive and binding on all parties affected thereby.

Thus, as a matter of contract, the Plan leaves no room for an arbitrated result to supersede any decision of the Board. The Board administering the Plan in question here has promulgated no arbitration requirement that applies to claimants who disagree with the Board's determinations. Only ERISA, through its vesting of jurisdiction in federal courts to review the decisions of pension trustees, provides the authority for interfering with trustee actions. Even that authority, as explained below, is severely circumscribed by the deferential standard of review applied to trustee actions.

Although the exhaustion of grievance-arbitration procedures plays an important role in the harmonization of labor-management relations, the Court does not feel that such exhaustion should be enforced here

---

1. Several courts have dealt with the issue of whether ERISA claims are subject to the same exhaustion of grievance-arbitration procedures that claims under the Labor Management Relations Act are. Clearly, employer-union disputes as to the proper funding of a co-sponsored plan implicates traditional issues of labor-management relations and, thus, exhaustion is required. *See Bressette Brothers v. International Talc Co., Inc.,* 527 F.2d 211, 216 (2d Cir.1975). Additionally, other courts have wavered on the question of whether to impose an exhaustion of grievance-arbitration requirement in various settings where the ERISA statute was involved. *Cf. Fox v. Merrill Lynch & Co.,* 453 F.Supp. 561, 565–67 (S.D.N.Y.1978) (multi-faceted action alleging several contractual claims as well as a claim under ERISA against nonfiduciary employer stayed pending outcome of arbitration), and *Michota v. Anheuser-Busch, Inc.,* 526 F.Supp. 299, 320–22 (D.N.J.1980) (same), *with Lewis v. Merrill Lynch & Co.,* 431 F.Supp. 271 (E.D.Pa.1977) (arbitration provision of employment contract not applicable to suit against pension plan fiduciaries for breach of fiduciary duty). *See also Waits v. Weller,* 653 F.2d 1288, 1292 (9th Cir. 1981) (noting the uncertainty of whether the arbitration requirement applies to ERISA claims grounded on trustee misconduct). None of the cases encountered in the Court's survey of the law, however, has sanctioned the requirement that defendants ask the Court to impose here—that of double exhaustion.

where plaintiffs are seeking only Court review of trustee action with respect to their rights under ERISA. The Court, therefore, declines to accept defendants' invitation to bar plaintiffs from any relief afforded under ERISA because of their failure to resort to the CBA's grievance-arbitration procedure.

### B. Exhaustion of Interfund Remedies

 Federal courts are given the power to review the actions of pension trustees with respect to present pension claims by virtue of 29 U.S.C. § 1132, which provides that:

> a civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, ... [and to redress] any act or practice which violates any provision of this subchapter or the terms of the plan....

When a trustee's decision as to eligibility is sufficiently finalized, the district court will uphold the determination unless it is found to be arbitrary, in bad faith, not supported by substantial evidence or erroneous on a question of law. *Music v. Western Conference of Teamsters Pension Trust Fund,* 712 F.2d 413, 418 (9th Cir.1983); *Paris v. Profit Sharing Plan, Etc.,* 637 F.2d 357 (5th Cir.1981). The proper role of the district court, however, is not to determine questions of plan construction relating to eligibility and coverage. Those issues were left to the pension trustees by Congress in its enactment of ERISA. *See Riley v. Meba Pension Trust,* 570 F.2d 406 (2d Cir. 1977); *Taylor v. Bakery and Confectionary Union,* 455 F.Supp. 816 (E.D.N.C. 1978).

 Pursuant to the adoption of a legal standard of review that leaves eligibility determinations, for the most part, with the trustees, the courts have also adopted and strictly enforced an exhaustion of interfund remedies principle. This principle allows for the development of a sufficient factual record to facilitate meaningful court review and, more importantly, serves as the mechanism to carry out Congress' intention to leave the management and administration of employee welfare plans with the trustees. This principle calls for the exhaustion of the internal remedies established by the pension plan to settle coverage disputes before resorting to direct legal redress in federal court. *Lucas v. Warner & Swasey Co.,* 475 F.Supp. 1071 (E.D.Pa.1979).

Aside from the general observations stated above, the exhaustion requirement serves many important purposes. As noted by the district court in its frequently cited opinion in *Taylor v. Bakery and Confectionary Union, supra:*

> [a]n examination of the underlying ERISA policies, interpreted analogously to the development of federal law under LMRA § 301, leads the court to conclude that Congress intended a claimant to exhaust his interfund remedies before seeking federal court review (with two exceptions noted *infra*). First, Section 1133 of the Act specifically requires the establishment of claims procedures, and the Secretary of Labor, pursuant to 29 U.S.C. § 1135, has promulgated extensive guidelines to implement these procedures. Much like the labor grievance system, this claims/appeals mechanism is designed to reduce the number of frivolous claims, promote the consistent treatment of claims, and create a non-adversarial method of claims settlement. *Cf. Vaca v. Sipes,* 386 U.S. 171, 191, 87 S.Ct. 903, 917, 17 L.Ed.2d 842 (1967).

Tied to these inter-fund claims procedures was Congress' awareness of the potential costs of pension reform, and it sought to 'strike a balance between providing meaningful reform and keeping costs within reasonable limits.' [1974] U.S.Code Cong. & Admin.News, pp. 4670, 4682. Congress was particularly concerned with outlining a private insurance system that would operate efficiently, thereby increasing its acceptance and institution among American business. U.S.Code News, *supra.* If claimants were allowed to litigate the validity of their claims before a final trustee deci-

sion was rendered, the costs of dispute settlement would increase markedly for employers. Employees would also suffer financially because, rather than utilize a simple procedure which allows them to deal directly with their employer, they would have to employ an attorney and bear the costs of adversary litigation in the courts.

455 F.Supp. at 819–820.

■ Before turning to the specific interfund procedures contained in the Plan, the Court notes that there are three exceptions to the ERISA-based exhaustion of interfund remedies requirement.[2] Where resort to the procedures would be futile or where the claimant is denied meaningful access to the procedures, the exhaustion requirement is excused. *Amato v. Bernard,* 618 F.2d 559, 568 (9th Cir.1980).

■ With respect to the applicability of these exceptions to this case, there are no allegations in any of plaintiffs' submissions that they have been denied access to the interfund remedy procedures outlined below. Plaintiffs' attempt to attack the Pension Board as being a sham, however, can be construed as an attempt to bring themselves within the futility exception to the exhaustion requirement. In this regard, plaintiffs argue that, because the Board is Company appointed and it is the Board that must determine the pension liability of the Company to plaintiffs, then the Board is a sham. This argument overlooks the fiduciary duties imposed upon the trustees by ERISA[3] and is, therefore, wholly without merit. *See also Flinchbaugh v. Chicago Pneumatic Tool Co.,* 531 F.Supp. 110, 113–14 (W.D.Pa.1982) (noting that ERISA contemplates pension trustees coming from company management and, therefore, no inherent conflict of interest exists).

Turning now to the claims and appeals procedure of the Company's Plan, the Court quotes from the Plan's eligibility determination procedures that are also contained in a booklet distributed to all the employees of the Brunswick plant. Paragraph (4) of Section II of the Plan requires that:

> [e]ach member, before any benefit shall be payable to him or his account under the Plan, shall file with the Pension Board such information as it shall require to establish his rights and benefits under the Plan.

Eligibility for a disability retirement pension is spelled out in ¶ 4 of Section IV. This paragraph states that:

> [a] pension payable to a member retiring under this paragraph 4 shall continue only so long as such member shall be permanently and totally disabled in the opinion of a medical authority designated by the Pension Board.

Finally, ¶ 6 of Section VII, in addition to granting the Board the exclusive right to decide all matters arising under the Plan as discussed earlier, also directs the Pension Board to "from time to time ... establish rules for the administration of the Plan and the transaction of its business."

Pursuant to its authority to promulgate rules for the administration of the Plan, the Board adopted a number of elaborate guidelines contained in a booklet distributed to all employees entitled "Your Service Benefit Pension Plan." On page 4 of the booklet, the following eligibility rules governing disability benefits appear:

> You will be eligible for a disability retirement pension if
> - you have completed 10 or more years of continuous service.
> - a physician chosen by the Pension Board determines that you are perma-

---

**2.** One of these exceptions, existing where there is an inadequate remedy at the hands of the trustees, is inapplicable because of the trustees' unrestrained and exclusive power to award benefits under the Plan.

**3.** 29 U.S.C. § 1104(a)(1) provides that:

a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
(A) for the exclusive purpose of:
 (i) providing benefits to participants and their beneficiaries; and
 (ii) defraying reasonable expenses of administering the plan.

nently and totally disabled and unable to work.

\* \* \* \* \* \*

· you submit a written request to the Pension Board.

The Board's authority is set forth, in general terms, on page 7 of the booklet. There, it is explained that:

[t]he plan is administered by a Pension Board of at least three members chosen by the Company's Board of Directors.

The Pension Board generally supervises the operation of the plan—interpreting its provisions, arranging for retirements and authorizing all benefit payments. You can contact the Pension Board at the Babcock & Wilcox Company, 161 East 42nd Street, New York, New York 10017 (telephone number 212–687–6700).

Finally, the process for appealing to the Board from a denial of benefits appears on page 9:

If an application for plan benefits is denied in whole or part, you or your beneficiary will receive written notification from the Pension Board. The notification will include the reasons given by the Pension Board for the denial with reference to the specific provisions on which the denial was based.

Within 60 days after receiving the denial, you, your beneficiary, or a duly authorized representative may then submit a written request for consideration of the application to the Pension Board. The Babcock & Wilcox Company, 161 East 42nd Street, New York, New York 10017. Any such request should be accompanied by documents or records in support of the appeal. You, your benefi-

ciary, or duly authorized representative may review pertinent documents and submit issues and comments in writing. The Pension Board will review the claim and within 60 days will provide a written response to the appeal explaining the reasons for the decision with a specific reference to the plan provisions on which that decision is based.

The Plan provisions, including the incorporated provisions of the booklet, are in full compliance with the requirements of ERISA. 29 U.S.C. § 1133 mandates that every pension plan:[4]

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

■ In conformance with the Plan provisions outlined above, the Board sent notification to both plaintiffs of its initial decision to deny their requests for disability retirement pensions. Brown's notice contained the reason for the denial as well as notice of the right to appeal the decision to the Board. Poppell's notice contained the reason for the denial and an invitation to call the Board's representative if he had any questions. Additionally, Poppell was later notified where to direct any appeal. Despite their possession of the Plan booklet and the notices of the Board as to their right to appeal,[5] plaintiffs chose to file this

---

**4.** The Plan's provisions, as written, are also in full compliance with the time and content of notice requirements delineated by the Department of Labor in guidelines printed at 29 C.F.R. § 2560.503–1(f) (1980). These regulations direct pension trustees to "provide every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:"

(1) the specific reason for the denial;

(2) specific reference to pertinent plan provisions on which the denial is based;

(3) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material is necessary; and

(4) appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

**5.** On December 2, 1982, plaintiff Brown's counsel sent a threatening letter to the Board or its

suit some months later challenging the denials. No attempt was ever made by either plaintiff to present the Board with the deluge of medical evidence of disability and other arguments that plaintiffs are prepared to present to this Court if given the opportunity.

In response to defendants' exhaustion of interfund remedies argument, plaintiffs seek to rely on several recent cases holding that, where there is a procedural violation of 29 U.S.C. § 1133—*i.e.,* an insufficient denial letter—the district court must remand the pension claim to the fiduciary in order to allow the claimant to present additional evidence. *See Wolfe v. J.C. Penney Co., Inc.,* 710 F.2d 388 (7th Cir.1983); *Grossmuller v. International Union, U.A.W.,* 511 F.Supp. 709 (E.D.Pa.1981). These cases indicate that, where the trustees have failed substantially to comply with the denial letter notice requirements contained in ERISA and 29 C.F.R. § 2560.-503–1(f) (1980), the case should be remanded to the fiduciary for a new determination of the benefits claim. The remand serves to rectify any prejudice to the claimant that might have resulted from the denial notice's failure to specify the Plan provisions on point or other information which would have aided the claimant in formulating an argument on appeal to the fiduciary.

On this point, the Court agrees with the plaintiffs. It strains credulity to find that the denial letter substantially complied with the provisions of the Plan booklet or the requirements of 29 U.S.C. § 1133. The notices did not even cite the particular Plan provisions relied upon by the Board in reaching their decisions, as required by the statute. Without a citation to the Plan provisions, plaintiffs had no opportunity to comprehend fully the reason for the denials and to know what deficiencies their applications must overcome to be successful on

appeal. *See Wolfe, supra* 710 F.2d at 392. This inadequacy is compounded by the lack of reference to the claim appeal procedure contained in the booklet. Such failure left it up to each plaintiff to ascertain, on his own, the steps involved in order to perfect an appeal. Nor did the notices refer to plaintiffs' right to present additional evidence to the Board in order to persuade it to reconsider its earlier denial of benefits. As explained previously, this information is mandated by ERISA and Department of Labor regulations promulgated pursuant to the statute. The Board's failure substantially to comply with ERISA's notice requirements warrants a procedural remedy in the form of permitting plaintiffs to resubmit their cases, with all their legal arguments and medical evidence, to the Board for its consideration.

Finally, the Court observes that a remand to the Board is also appropriate because the position taken by the parties in the present posture of this suit would require the Court to ignore the limited role prescribed for it under ERISA. Both plaintiffs and defendants stand ready to present the Court with new theories to support their respective positions on eligibility.[6] ERISA would permit the Court to "focus [only] on the evidence before the trustees at the time of their final decision and [does not allow the Court] to hold a *de novo* hearing on the question of eligibility." *Wardle v. Central States Etc.,* 627 F.2d 820, 824 (7th Cir.1980). A federal court is simply not authorized to consider evidence never presented to the fiduciary but, rather, should remand the claim to the trustees for a new determination. *Id. See also Weeks v. Coca-Cola Bottling Company of Arkansas,* 491 F.Supp. 1312 (E.D.Ark. 1980). The end result is that the district court has a more complete record to review

---

representative. The letter asserted that if Brown's pension was not immediately forthcoming there would be no choice but to file a lawsuit. Apparently, the Board did not treat the letter as an appeal from its denial.

**6.** For example, with respect to the denial of Brown's application for disability benefits, the

Board relied upon a form letter executed by Brown which purported effectively to end his participation under the Plan. Before this Court, however, defendants assert Brown's lack of member status at the time he applied for benefits as grounds for the Board's decision.

and the Congressional intent behind ERISA—to entrust the administration and management of pension trusts to the fiduciaries—is upheld.

Under these circumstances, the Court concludes that it cannot rely upon defendants' exhaustion of interfund remedies argument to grant summary judgment against plaintiffs. The Court, therefore, is compelled to REMAND the claims for pension benefits to the fiduciary for its consideration of plaintiffs' additional medical evidence and arguments.