George W. LINDAHL, on behalf of himself and all others similarly situated, Plaintiff,

v.

AMERICAN TELEPHONE & TELEGRAPH CO., E.H. Crabb, Dr. J. McCahan, S.J. Huse, E. Mayfield, and R.E. Sageman, individually and in their official capacities as members of the Employee Benefits Committee of American Telephone's Plan for Employees' Pensions & Disability Benefits, Defendants.

No. 82 C 480.

United States District Court, N.D. Illinois, E.D.

May 22, 1985.

Stanley Eisenstein, Katz, Friedman, Schur & Eagle, Chicago, Ill., for plaintiff.

William McKittrick, Michael G. Cleveland, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This action under Sections 404, 405 and 406 of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1104, 1105, and 1106, is before the court on the parties' cross-motions for summary judgment. Plaintiff George W. Lindahl alleges that defendant American Telephone and Telegraph Co., Long Lines Division, and individual members of Long Lines' Employee Benefits Committee ("EBC"), violated their fiduciary duties under ERISA by forcing the plaintiff into involuntary retirement. Defendants contend that plaintiff's claims are barred by ERISA's statute of limitations, that plaintiff is estopped from litigating the issue of fiduciary breach by virtue of a prior arbitration award in the defendant's favor, and that plaintiff can put forth no evidence to support his allegation that defendants acted arbitrarily and capriciously so as to violate their fiduciary duty. Defendants also seek to strike plaintiff's claim for punitive damages and to dismiss defendant Jermyn McCahan on the ground that he is not a fiduciary. Plaintiff, in turn, argues that the standard governing defendants' actions was whether they looked after his best interests as a pension plan beneficiary, and that he is entitled to partial summary judgment due to the committee's siding with the employer against him in a job disability dispute. Because the court finds for defendants on the limitations issue, it does not reach the other issues raised by the parties.

### FACTS

Plaintiff George W. Lindahl was hired by AT & T Long Lines Division on or about October 7, 1948, until his involuntary retirement on January 22, 1977. Throughout this period, Lindahl was a participant in AT & T's Plan for Employees' Pensions & Disability Benefits. The responsibility for administering the plan was and is vested in the Employee Benefits Committee (EBC). Defendants Sylvester J. Huse, Ernest H. Crabb, and Edgar Mayfield, officers of Long Lines, were all members of the EBC at the time of plaintiff's forced retirement. Defendant Jermyn McCahan, Corporate Medical Director of Long Lines, was the medical advisor to the EBC and attended all their meetings.

In January 1976, plaintiff experienced a recurrence of ulcerated varicose veins from which he had suffered for several years, and which had necessitated several prolonged absences from work in the past. He was hospitalized from February 2 through February 17, 1976, under the care of Dr. Tom R. DeMeester. On March 11, 1976, DeMeester released plaintiff to return to work on March 22, 1976.

On March 19, 1976, Dr. Daniel E. Conrad, Medical Director for Long Lines' Central Region, examined plaintiff. Dr. Conrad had examined plaintiff previously in connection with his leg problems and concluded that plaintiff was medically unable to return to work. Conrad discussed this assessment with DeMeester and reexamined plaintiff on April 15, 1976, but reconfirmed his opinion and refused to allow plaintiff to return to work.

On September 2, 1976, DeMeester again examined Lindahl and reported to Conrad that Lindahl should be able to work. DeMeester reiterated this opinion by letter dated November 16, 1976. Conrad nonetheless continued to feel that plaintiff was unable to work, and discussed his opinion with McCahan. Together they arranged for plaintiff to be seen by Dr. Peter Nennhaus, a cardiovascular surgeon. Nennhaus indicated that Lindahl's disability was not at all serious and could easily be controlled by use of Kenalog ointment and a knee-high Kendrick stocking. Nennhaus regarded the Kendrick stocking as vastly superior to the Jobst brand Lindahl had been using and as equivalent to bed rest for curing ulcerated venous problems.

On January 20, 1977, Conrad reexamined plaintiff, and found that plaintiff still had unhealed ulcers. Since a year off of work with supposed bed rest and leg elevation had not fully healed Lindahl's condition, Conrad concluded that plaintiff's condition could not be expected to improve by use of the Kendrick stocking. Conrad therefore recommended to plaintiff's supervisor, Stanley Bushhouse, that plaintiff be invol-

untarily retired due to the likelihood of a recurrence in the near future. Bushhouse and his superiors furthered this recommendation to the EBC with the notice that both plaintiff and his personal physician disagreed with Conrad's opinion. The EBC, on February 8, 1977, voted to place plaintiff on involuntary retirement, notwithstanding his opposition.

Plaintiff was informed by Conrad of the involuntary retirement in late January. On January 28, 1977, the Union filed a grievance on plaintiff's behalf alleging that the company terminated him in violation of its collective bargaining agreement. After April 25, 1979, when the parties failed to reach agreement in informal grievance meetings, the Union demanded arbitration. Long Lines refused on the ground that the arbitration clause covered only dismissals and not retirements. In 1980, the Union filed suit to compel arbitration in federal district court. On September 9, 1980, Judge Hubert L. Will ordered the parties to arbitrate the issue of arbitrability. The parties proceeded to arbitration that summer, and this suit was filed the following January. On March 31, 1982, Arbitrator Zel S. Rice II determined that the dispute was not arbitrable, and rejected the Union's arguments that the EBC had violated ERISA through its actions.

### Statute of Limitations

In Count I of plaintiff's complaint, which is the sole remaining count in this lawsuit [1], plaintiff seeks damages for the defendants' breach of fiduciary duty under ERISA. This claim is governed by the limitations period under section 413 of ERISA, 29 U.S.C. § 1113(a)(2):

> No action may be commenced under this subchapter with respect to a fiduciary breach of any responsibility, duty or obligation under this part . . . after the earlier of
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, . . . or

---

**1.** Count II was dismissed by stipulation of the parties on May 23, 1983, and this court ordered

plaintiff's class allegations stricken on March 22, 1984.

(2) three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation. . . .

The present lawsuit was filed on January 26, 1982. Plaintiff testified at his deposition that he knew in January 1977 that the EBC would have final say over any company recommendation for involuntary retirement. Since the EBC's decision was rendered on February 8, 1977, it is obvious that more than three years passed from the date plaintiff actually learned of the facts comprising the alleged ERISA violation and the present suit. Defendants therefore move that judgment be entered on limitations grounds.

In his opposition brief, plaintiff makes no argument that section 413(a)(2)'s three-year period is inapplicable to this action, nor does he argue that any factual disputes exist with regard to his knowledge of the ERISA breach back in 1977. Plaintiff's sole contention is that the limitations period should be tolled throughout the period that he exhausted his grievance and arbitration remedies. Defendants concede that exhaustion, if required as a prerequisite to this suit, would properly toll the running of the limitations period. Defendants nonetheless contend that exhaustion of plaintiff's collective bargaining remedies is not required for maintaining a statutory ERISA claim, and that resort to such remedies therefore does not toll the time for filing a claim.

In *Kross v. Western Electric Co.,* 534 F.Supp. 251, 253 (N.D.Ill.1982), *aff'd in part,* 701 F.2d 1238 (7th Cir.1983), this court dismissed an ERISA suit under section 502(a)(3) for failure to exhaust a pension plan's internal claims procedures. The court noted that exhaustion of claims procedures was uniformly required in actions to recover benefits under section 502(a)(1)(B) of ERISA but not in civil actions for breach of fiduciary duty under section 502(a)(2). The court concluded that the plaintiff's claim, which alleged that the company forced him into early retirement to avoid the vesting of his pension benefits,

was more like a 502(a)(1)(B) claim for benefits than like a 502(a)(2) claim for breach of fiduciary duty, and required exhaustion.

On appeal, the Seventh Circuit did not address the distinction among ERISA claims drawn by this court, but instead held that application of the exhaustion doctrine in ERISA cases is a matter generally left to the discretion of the district courts. 701 F.2d at 1244. The *Kross* panel nonetheless stressed a "strong federal policy expressed in case law, encouraging private resolution of ERISA-related disputes." 701 F.2d at 1244.

Both *Kross* and the cases on which it relied concerned exhaustion of claim-resolution procedures set up under the pension plan itself, and not grievance arbitration procedures pursuant to a *separate* collective bargaining agreement. Defendants argue that the policies requiring exhaustion in *Kross* do not apply to the present situation. Defendants further argue, by analogy to case law concerning Title VII and the Fair Labor Standards Act, that exhaustion of arbitral remedies for unfair termination under a collective bargaining agreement is not a statutory prerequisite for an ERISA claim alleging breach of fiduciary duty. The court will address these arguments in turn.

In *Amato v. Bernard,* 618 F.2d 559, 567–68 (9th Cir.1980), relied on by the Seventh Circuit in *Kross,* the Ninth Circuit set forth several factors compelling ERISA claimants to exhaust administrative remedies before bringing suit in federal court. The *Amato* court noted that Congress had expressly authorized courts to develop a body of federal substantive law under ERISA comparable to that under Section 301 of the LMRA, where courts have usually required exhaustion. *Id.* at 567. However, the court laid particular stress on the text of ERISA itself. The court noted that section 503 of ERISA, 29 U.S.C. § 1133, requires a claims appeal procedure for every certified plan, apparently in the view that a nonadversarial method of claims settlement would minimize costs and prevent premature judicial intervention in the decision

making of ERISA trustees. The court therefore concluded that not to require exhaustion of such procedures would defeat statutory policy and undermine the procedures contemplated in section 503. *See also Taylor v. Bakery & Confectionary Union & Industry International Welfare Fund,* 455 F.Supp. 816, 820 (E.D.N.C.1978) (broad managerial discretion given trustees under ERISA demands that they be given the opportunity to resolve an employees' benefit eligibility before judicial review). Finally, the *Amato* court stressed the assistance to judicial review that would come from allowing trustees to give full consideration to their actions prior to suit. 618 F.2d at 568.

Imposition of an exhaustion requirement which goes to contractual grievance remedies rather than internal pension plan remedies, would not promote nonadversarial claims settlement and would not advance trustee discretion by allowing ERISA fiduciaries to consider their actions fully before judicial intervention. Indeed, the individual defendants in this case were not named parties to plaintiff's grievance proceeding, which was in effect a claim for unfair termination by the company. As noted in *Amato,* "enforcement of a general agreement to arbitrate any dispute would be very different than the requirement imposed in this case, of exhaustion of internal administrative remedies provided by pension trusts as required by ERISA itself." 618 F.2d at 568 n. 10. The same opinion was voiced in *Brown v. Babcock & Wilcox Co.,* 589 F.Supp. 64, 67 (S.D.Ga.1984), where the court held that a plaintiff who had exhausted internal pension plan procedures need not submit the trustees' adverse decision to labor arbitration before filing suit in federal court.

Set against this authority is the strong federal policy favoring arbitration of employer-employee disputes, *Kross,* 701 F.2d at 1244, and the rule in this circuit that arbitration procedures provided for in the pension plan itself should be exhausted prior to bringing a contractually based ERISA claim. *Challenger v. Local Union No. 1 of the International Bridge, Structural and Ornamental Ironworkers,* 619 F.2d 645, 648 (7th Cir.1980). This court is additionally hesitant to create a rule which would force ERISA plaintiffs to file lawsuits while still pursuing contractual grievance remedies which might moot the relief sought in court.

In the end, however, these concerns do not justify either an exhaustion requirement or a tolling rule. Pursuit of a contractual remedy which could moot subsequent judicial relief is not enough to toll the statute of limitations. *See International Union of Electrical Radio & Machine Workers v. Robbins & Myers, Inc.,* 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976). The court further notes that any hardships to ERISA plaintiffs (or defendants) forced to litigate two remedies simultaneously can be minimized by staying the ERISA claim pending an ongoing arbitral proceeding which could provide the same relief requested. *Viggiano v. Shenango China Div. of Anchor Hocking,* 750 F.2d 276, 281 (3d Cir.1984); *Amaro v. Continental Can,* 724 F.2d 747, 752 (9th Cir. 1984). Where arbitral proceedings to resolve a factually related contract claim continue beyond the limitations period for an ERISA claim, it does not seem unreasonable for plaintiffs to file a lawsuit in order to preserve their right to judicial relief at a later date.

There is, however, a second reason for not requiring exhaustion in the present case. Plaintiff does not dispute the EBC's contractual authority to retire him involuntarily on a service pension. That authority is manifest from Section 4.1 of the Plan (Complaint Exhibit A), which provides that "all employees regardless of age whose terms of employment have been thirty or more years shall if they so request, or may at the discretion of the Committee, be retired from active service...." Thus, plaintiff's ERISA claim is narrowed to the question whether defendants violated their fiduciary duty by retiring plaintiff at the company's request and against the medical opinions of the two outside physicians. Such a claim involves statutory rights be-

yond the competence of the arbitrator to decide, as plaintiff himself acknowledges in his argument opposing application of collateral estoppel.

Because plaintiff's statutory and contractual claims are independent remedies, it follows that exhaustion of plaintiff's contractual remedies is not required before resort to the judicial forum, and that the statute was therefore not tolled while those contractual remedies were pursued. In *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) and *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), the Supreme Court held that exhaustion of a collectively bargained arbitration procedure is not a prerequisite to suits to enforce statutory rights under Title VII or the Fair Labor Standards Act, respectively. In *International Union of Electrical Radio & Machine Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976), the Court found a necessary corollary of its earlier opinion in *Gardner-Denver* to be that pursuit of grievances under a labor agreement could not toll the time for bringing a Title VII suit.

In reliance on *Gardner-Denver*, most courts have not imposed an exhaustion requirement in ERISA suits alleging breach of fiduciary duties. *See, e.g., Delgrosso v. Spang & Co.*, 586 F.Supp. 177 (W.D.Pa. 1983); *Lieske v. Morlock*, 570 F.Supp. 1426, 1429 (N.D.Ill.1983); *Lewis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 431 F.Supp. 271, 276–77 (E.D.Pa.1977). Analogously, other courts have concluded that substantive ERISA claims, as opposed to ERISA claims to enforce the terms of a pension plan, can be brought directly in federal court notwithstanding an agreement to arbitrate. *Barrowclough v. Kidder Peabody & Co.*, 752 F.2d 923, 939 (3d Cir.1985); *Amaro v. Continental Can Co.*, 724 F.2d 747, 751–52 (9th Cir.1984).

As explained in *Lewis*, the rule for not requiring exhaustion in ERISA fiduciary violation suits is predicated not only on the principle of *Gardner-Denver*, but also on sections 409(a) and 410 of ERISA. Section 410 declares void as against public policy an agreement to relieve an ERISA fiduciary of any statutory responsibility or liability. The *Lewis* court reasoned that answering a suit is a consequence of liability under § 409(a), and that arbitration agreements which prevent that consequence cannot be enforced. 431 F.Supp. at 276–77. Section 409(a) is applicable only to ERISA claims for breach of fiduciary duty, and does not apply to other substantive violations. *Fox v. Merrill Lynch & Co.*, 453 F.Supp. 561, 566 (S.D.N.Y.1978).

The continuing vitality of *Lewis* in this circuit is far from clear. In *Challenger v. Local Union No. 1*, 619 F.2d 645 (7th Cir. 1980), the Seventh Circuit rejected *Lewis*'s analogy between ERISA and Title VII, on the ground that Title VII involves public rights whereas *Challenger*'s ERISA claim involved rights arising under a private pension plan. 619 F.2d at 649 n. 4 (citing *Fox*, 453 F.Supp. at 566). The *Challenger* panel otherwise distinguished *Lewis* on the ground that Challenger had alleged no breach of fiduciary duty which could call § 410 into operation. *Id.* at 648–49. Other courts which have required exhaustion of administrative remedies under ERISA have also distinguished *Lewis* as a case involving a fiduciary breach. *Amato*, 618 F.2d at 568 n. 10; *Fox*, 453 F.Supp. at 566. The statutory reasoning in *Lewis* thus remains persuasive despite a partial rejection of *Lewis* in this circuit.

The court further questions whether *Lewis* remains good law after *Kross*, in which the Seventh Circuit was silent on the distinctions to be drawn among ERISA claims for purposes of exhaustion, and left the process open to district court discretion. *Kross* has been criticized and rejected in other circuits for failing to make this distinction, however. *See, e.g., Amaro*, 724 F.2d at 751–52; *McClendon v. Continental Group, Inc.*, 602 F.Supp. 1492, 1504–05 (D.N.J.1985); *Garry v. TRW, Inc.*, 603 F.Supp. 157, 163–64 (N.D.Ohio 1985). The court therefore concludes that the ruling in *Kross* should in any event not be extended

beyond the context of internal pension plan remedies, and certainly not to require arbitration of fiduciary claims. *See Barrowclough*, 752 F.2d at 939 n. 15 (distinguishing *Kross* on this basis).

Because the parties have focused their attention exclusively on the exhaustion requirement, neither party has addressed the ramifications of that issue in its current context. Plaintiff suggests, without citing to any case law, that defendants' recalcitrance in going forward with arbitration justifies any untimeliness in filing the present suit. While the company's actions are clearly responsible for prolonging plaintiff's grievance proceedings, the court fails to see how the company's action is relevant to the tolling of plaintiff's ERISA claim. Throughout the grievance, the company took the position that the dispute was non-arbitrable, in part because the EBC and not the company had effected Lindahl's retirement. Lindahl moreover testified that he knew back in 1977 that the EBC had to give final approval over any decision on involuntary retirement. Thus, although the company's refusal to arbitrate until ordered to do so by Judge Will protracted the arbitration process, the company in no way misled plaintiff into pursuing that remedy to the exclusion of others.

Although plaintiff has not made the argument, the court also notes that plaintiff's conduct during arbitration further refutes the possibility of equitable tolling. The cases on which plaintiff relies for the exhaustion requirement were decided subsequent to the filing of this suit, so plaintiff cannot credibly claim reliance on case law in determining that he had to exhaust his labor-related remedies before seeking relief under ERISA. Second, plaintiff in fact filed this lawsuit before arbitrator Rice had rendered a decision, thus suggesting that his counsel understood the two remedies to be somewhat independent. Finally, plaintiff's theory throughout arbitration—that the company had used the EBC to effect a termination which was contractually improper—reveals that the facts underlying plaintiff's breach of fiduciary duty claim were known to him from the onset of his grievance.

### Conclusion

Accordingly, the court enters judgment for defendants on Count I of plaintiff's complaint. That count being the sole remaining claim in this case, judgment is final under Rule 54.

It is so ordered.